RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 09-3833

JASON SHAWN BROOKS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 08-00330-001—Sara E. Lioi, District Judge.

Argued: December 10, 2010

Decided and Filed: January 6, 2011

Before: GILMAN and GRIFFIN, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Kristina W. Supler, IAN N. FRIEDMAN & ASSOCIATES, L.L.C., Cleveland, Ohio, for Appellant. Laura McMullen Ford, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Kristina W. Supler, IAN N. FRIEDMAN & ASSOCIATES, L.L.C., Cleveland, Ohio, for Appellant. Laura McMullen Ford, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Jason Shawn Brooks pled guilty to three counts of sex crimes against children. Count 1 was for violating 18 U.S.C.

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

§ 2422(b) by attempting to entice and coerce a person that he believed to be a 14-year-old girl to engage in illegal sexual activity with him. The second count was for violating 18 U.S.C. § 2423(b) by traveling between states with the intent to engage in illicit sexual conduct with a 14-year-old girl. Count 3 was for violating 18 U.S.C. § 2252A(a)(2)(A) by distributing child pornography. After the district court utilized United States Sentencing Guidelines (U.S.S.G.) § 2G2.1 to calculate the applicable Guidelines range and considered the 18 U.S.C. § 3353(a) sentencing factors, it imposed a sentence of 295 months' imprisonment for Count 1, the same sentence for Count 2, and 240 months' imprisonment for Count 3, with the sentences on all counts to run concurrently.

Brooks argues on appeal that his total sentence is both procedurally and substantively unreasonable. He contends that his sentence is procedurally unreasonable because the district court failed to (1) address his request for mitigation based on his drug problem, depression, sexual addiction, and the abuse that he suffered as a child; (2) consider all of the 18 U.S.C. § 3553(a) factors; and (3) adequately explain its reasons for the chosen sentence. Brooks further argues that his sentence is substantively unreasonable for two reasons: (1) U.S.S.G. § 2G2.2—which was the appropriate starting reference for the distribution-of-child-pornography count—is not based on empirical data and therefore led to a disproportionately harsh sentence, and (2) the district court gave an unreasonable amount of weight to the nature- and seriousness-of-the-offense factors of 18 U.S.C. § 3553(a). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In May 2008, Brooks made contact with an undercover officer posing as "Lorie," the mother of a purported 14-year-old girl named "Laci," in an internet chat room called "Open Minded Parent." He wrote that he wanted a mom and a daughter, asked Laci's age, and was told that she was 14.

At various times during the months of May, June, and July 2008, Brooks used the telephone and internet to engage in sexually graphic conversations with the

undercover officers posing as Lorie and Laci. Brooks discussed his desire to engage in various sexual acts with both of them in explicit detail, including oral, anal, and genital sex. He also encouraged Laci to invite a teenage girlfriend to engage in sexual activity with them, and he expressed his desire to have a baby with Laci so that he could then have sex with the baby.

During several of these communications, Brooks e-mailed images containing child pornography to Lorie and Laci, including an image of an adult male having sexual intercourse with a prepubescent female. Brooks also asked if he could take pictures of Laci and him engaging in sexual activity so that he could put the images on his and Laci's computers.

On July 14, 2008, Brooks traveled from Texas to Ohio for the purpose of engaging in sexual activity with Lorie and Laci. The police arrested him at the Akron-Canton airport, and an inventory search of his luggage revealed a 24-pack of condoms and a camera. This was significant because Brooks had been told that condoms were required to have sex with Laci. During his interview with the police, Brooks admitted that (1) he had traveled from Texas to Ohio to have sex with Lorie, Laci, and Laci's teenage girlfriend, and (2) he had previously engaged in a sexual relationship with a 16-year-old girl when he was an adult.

In the Presentence Report (PSR), the Probation Office first determined that U.S.S.G. § 2G1.3 applied to the first two counts and U.S.S.G. § 2G2.2 applied to the third count. Next, the Probation Office determined that because "the offense involved . . . seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," the cross-reference in subsection (c)(1) of each of these Guidelines specified that U.S.S.G. § 2G2.1 applied to all three counts. The three counts were consolidated into one Guidelines calculation in the PSR because U.S.S.G. § 3D1.2 provides that these offenses are to be grouped. Using U.S.S.G. § 2G2.1, the Probation Office then calculated a total offense level of 39. This offense level, coupled with Brooks's criminal history category II, led to an initial Guidelines sentencing range of 292 to 365 months' imprisonment.

The district court held Brooks's sentencing hearing after receiving both the PSR and a psychological examination of Brooks. Neither party objected to the court adopting the Probation Office's recommendation that the total Guidelines offense level be set at 39. But because the psychological report explained that Brooks's prior conviction for carrying a concealed weapon involved a "memorabilia sword in his trunk," the court decided that Brooks's criminal history was overstated. It therefore departed downward to criminal history category I. That departure resulted in a revised Guidelines range of 262 to 327 months of imprisonment.

The district court then considered the remaining sentencing factors under 18 U.S.C. § 3553(a). In discussing Brooks's history and characteristics, for example, the court noted his history of drug abuse, eight-year employment at a topless nightclub, depression following his father's death, and sexual "abuse[] by his father's girlfriend when he was 12 years old." When Brooks argued that he could learn from the "mistake" of his sex crimes and turn his life around, just like he quit cocaine after participating in a drug program, the court noted that Brooks "really didn't overcome the addiction to illegal drugs at that time[.] What you did was you shifted from cocaine, and then went back to marijuana, and then added ecstasy for a period of time." The court also reasoned that Brooks's comment during a chat with Lorie that he had been "looking for ten years for a real girl to have family fun with" implied that Brooks's conduct was not a mistake or a "one time impulsive moment," but rather "something that was much more deep-seated."

Brooks further argued that the district court should sentence him below the bottom of the Guidelines range because of his history of mental illness, drug problem, abuse as a child, and depression after his father's death. He contended that a sentence under 262 months would still be substantial, and he implied that a sentence within the Guidelines range would be unreasonable.

The district court responded by observing that a sentence at the top of the Guidelines range or even higher "could also be justified" because of the seriousness of the offense and the need to protect the public and to deter others from engaging in

similar conduct. Numerous facts were emphasized by the court in reaching its sentence, including that Brooks acted on his desire to engage in illegal sexual activity with a minor by flying from Texas to Ohio with condoms and a camera in his luggage; he communicated with Laci "in very graphic sexual terms"; he asked Laci to invite a teenage girlfriend so that he could engage in sexual activity with the friend as well; he asked Laci if he could take pictures of them engaging in sex acts so that he could put the pictures on both of their computers; he admitted to previously having sex with a 16-year-old minor when he was an adult; and "[h]e suggested that he wanted to have a child with [Laci] and become sexually active with that child."

Although the district court sympathized with Brooks's depression, it concluded that his depression did not justify his conduct because the depression should have been dealt with in more positive ways. And there was nothing before the court to indicate that Brooks would not again act upon his desire to have sex with minors. The court therefore concluded that the Guidelines range was appropriate, and it decided to sentence Brooks within that range "because of the very serious nature of the offense."

Accordingly, the court sentenced Brooks to 295 months' imprisonment on both Counts 1 and 2—in the middle of the applicable Guidelines range—and 240 months' imprisonment on Count 3, with the sentences on all counts to run concurrently. The court also recommended that Brooks participate in drug and sex-offender treatment programs while in prison. Brooks now appeals his overall sentence of 295 months' imprisonment.

## II. ANALYSIS

Brooks argues that his sentence is unreasonable for four reasons, the last three of which he raises for the first time on appeal:

1.    The district court did not address his argument for a lower sentence based on his drug problem, depression, sexual addiction, and the abuse that he suffered as a child.

2.    The district court failed to consider the § 3553(a) factors and to adequately explain its reasons for the chosen sentence.

3.      "The flaws in the creation of [U.S.S.G.] § 2G2.2"—namely, that it is based on "a series of politically driven congressional amendments aimed at increasing the length of sentences imposed" rather than being based on empirical data—"and its cross-reference to [U.S.S.G.] § 2G2.1 produced a disproportionately punitive sentence."

4.      The district court gave an unreasonable amount of weight to the nature- and seriousness-of-the-offense factors of 18 U.S.C. §3553(a).

We address each argument in turn below after discussing the applicable standard of review.

**A.      Standard of review**

Criminal sentences must be both procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). Challenges to the reasonableness of a sentence are reviewed under the deferential abuse-of-discretion standard. *United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009).

We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. The district court's legal interpretation of the Guidelines are reviewed de novo, but its factual findings will not be set aside unless they are clearly erroneous. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). "Although the district court need not explicitly reference each of the § 3553(a) factors, there must be sufficient evidence in the record to affirmatively demonstrate that the court gave each of them consideration." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (citation omitted).

A sentencing explanation is adequate if it allows for meaningful appellate review, *Gall*, 552 U.S. at 50, which is accomplished by "set[ting] forth enough [of a statement of reasons] to satisfy the appellate court that [the sentencing judge] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking

authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The "sentencing judge is not required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in passing." *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008). For sentencing purposes, the Supreme Court has made clear that "[t]he appropriateness of brevity or length, conciseness or detail, . . . depends upon circumstances" that are left "to the judge's own professional judgment." *Rita*, 551 U.S. at 356.

If the sentence is deemed procedurally reasonable, we must then determine if it is substantively reasonable. *Bolds*, 511 F.3d at 581. The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor. *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citation omitted). Sentences that fall within the applicable Guidelines range are rebuttably presumed to be reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). Moreover, an appellate court should not overturn a sentence just because it "might reasonably have concluded that a different sentence was appropriate." *Gall*, 552 U.S. at 51.

Another factor that affects the standard of review in sentencing cases turns on whether the district court asked the "*Bostic*" question. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). The rule set forth in *Bostic* requires that sentencing arguments raised for the first time on appeal are reviewed under the plain-error standard if the court asked "the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *Id*. But this rule does not apply to an argument that the sentence was substantively unreasonable unless the argument is an "argument[] for leniency that the defendant does not present to the trial court." *Vonner*, 516 F.3d at 389, 391-92 ("If, under the heading of 'substantive reasonableness,' a defendant argued on appeal that the length of his sentence was too long because it did not account for the fact that he had voluntarily left a drug-trafficking conspiracy and had turned away from a life of crime before the police uncovered the

conspiracy, *compare Gall*, 128 S. Ct. at 592, we would apply plain-error review to these two arguments if the defendant had never presented them to the district court.").

After pronouncing the sentence in the present case, the district court asked both counsel whether they had "[a]nything relative to the sentence, any objections, comments, relative to the sentence whatsoever?" Brooks's counsel replied, "No, Your Honor." The plain-error rule in *Bostic* therefore applies to the extent that the three new arguments Brooks raises on appeal are challenges to the procedural reasonableness of his sentence. *See Vonner*, 516 F.3d at 389.

Brooks's first argument—that the district court did not address his drug problem, depression, sexual addiction, and the abuse that he suffered as a child—concerns procedural reasonableness. This argument was raised below and is therefore reviewed under the normal abuse-of-discretion standard. *Gall*, 552 U.S. at 51

Brooks's second argument—that the district court failed to consider the 18 U.S.C. § 3553(a) factors and failed to adequately explain its reasons for the chosen sentence—also addresses procedural reasonableness because the argument challenges the procedure that the court employed in determining and setting forth the sentence. The *Bostic* plain-error rule therefore applies. Under the plain-error standard,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (citations, brackets, and internal quotation marks omitted).

Brooks couches his third argument—that U.S.S.G. § 2G2.2 is not based on empirical data and therefore led to a disproportionately harsh sentence—as a substantive-reasonableness argument to which the plain-error rule in *Vonner* does not apply. *See United States v. Mikowski*, 332 F. App'x 250, 255-56 (6th Cir. 2009)

(treating an identical argument as a challenge to the substantive reasonableness of the sentence). But at times Brooks suggests that the district court's error was in failing to examine the underpinnings of Guidelines §§ 2G2.1 and 2G2.2. This suggestion is more akin to a procedural-reasonableness argument where the plain-error standard would apply because the argument addresses the procedure that the court should employ before determining a sentence. But we need not decide whether Brooks's third argument is a procedural- or substantive-reasonableness argument, or perhaps both, because the district court's decision passes muster even under a less deferential standard of review than the plain-error standard. Our conclusion also obviates the need to decide whether Brooks makes a leniency-based substantive-reasonableness argument that would be subjected to plain-error review.

Brooks's fourth argument—that the district court gave an unreasonable amount of weight to the nature- and seriousness-of-the-offense factors of § 3553(a)—also addresses substantive reasonableness. This argument is therefore reviewed under the abuse-of-discretion standard rather than the plain-error standard. *See United States v. Young*, 553 F.3d 1035, 1054 n.14 (citing *Vonner*, 516 F.3d at 389).

**B.     Brooks's drug problem, depression, sexual addiction, and the sexual abuse that he suffered as a child**

The first procedural-reasonableness argument that Brooks raises is that the district court did not address his drug problem, depression, sexual addiction, and the abuse that he suffered as a child, and that the court did not choose a below-Guidelines sentence based on these factors. We review this argument under the normal abuse-of-discretion standard because Brooks raised these issues below. *See Vonner*, 516 F.3d at 390-91. The record reflects, contrary to Brooks's contention, that the court did in fact adequately address these arguments. When Brooks claimed that he could learn from the sex crimes that he was currently charged with and could turn his life around, just like he quit cocaine after participating in a drug program, the court explicitly noted that Brooks did not overcome his drug addiction, but merely shifted from one drug to another. Regarding Brooks's depression, the court reasoned that the depression did not justify Brooks's criminal conduct, and that he should have dealt with his depression in a more

positive way. And Brooks's sexual addiction cut against him in the court's eyes. The court reasoned that Brooks's conduct evinced a "deep-seated" problem, and the court was clearly concerned that Brooks would again "act upon . . . the impulse to have sex with minors." Finally, although the court mentioned only briefly the sexual abuse that Brooks had suffered as a child, the lack of a detailed discussion does not constitute procedural error because "a sentencing judge is not required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in passing." *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008) (citations omitted).

## C.      Considering the § 3553(a) factors and explaining the sentence

Brooks's second procedural-reasonableness argument is that the district court failed to consider all of the § 3553(a) factors and did not adequately explain the sentence reached. He contends that the court also failed to consider the psychological report or, at the very least, did not explain why it rejected the mitigating information in that report. Because he raised neither of these arguments below and because the court asked his attorney if he had any other objections after the court pronounced the sentence, we review these arguments under the plain-error standard. *See Vonner*, 516 F.3d at 385-86.

Brooks's contention that the district court failed to consider all of the § 3553(a) factors and the psychological report are meritless. Contrary to Brooks's claim, the transcript of the sentencing hearing shows that all of the relevant § 3553(a) factors were explicitly considered. This includes the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, sentencing disparities, the seriousness of the offense, just punishment, deterrence, protection of the public, and treatment for the defendant. As for considering the psychological report, the court reduced Brooks's criminal history category from II to I based on information that was in only that report; namely, that his concealed-weapon conviction involved a memorabilia sword in his trunk.

Brooks's claim that the district court did not explain why it rejected the mitigating information in the psychological report is similarly unpersuasive. In the first

place, this argument assumes that the court had to state why it was not persuaded by the examiner's finding that Brooks was amenable to mental-health treatment. But Brooks did not contend below that his sentence should be reduced because of any findings in the psychological report, so there was no specific argument for the court to reject. Because the "sentencing judge is not required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in passing," *Madden*, 515 F.3d at 611, the judge is clearly not required to address arguments that are not even raised.

The psychological report, moreover, is less favorable to Brooks than he implies. Although the report states that "[h]is amenability for sex offender programming is good in that he takes a greater degree of responsibility for his actions than is typical in sex offense cases," it also notes that "Brooks has significant [risk] factors that would place him in a higher priority category for a sex offender treatment program." Some of these risk factors are "his preoccupied behavior and his sexual interest in minor females, his distorted views regarding childhood sexuality, his socioaffective struggles, and his history of significant substance dependence problems." Because the report contains only islands of positive statements amidst a sea of otherwise largely negative observations, the district court did not plainly err by failing to specifically address the isolated positive statements in the psychological report.

Our conclusion is further supported by other evidence suggesting that Brooks poses a danger to minors, such as his admissions that he had been looking for a couple to engage in "family fun with" for 10 years and that as an adult he has already had a sexual relationship with a minor. Indeed, in light of all of the evidence, we find no basis to disturb the district court's conclusion that "there is nothing before the Court to indicate that the defendant will not, once again, act upon . . . the impulse to have sex with minors."

**D.     U.S.S.G. § 2G2.2 and its cross-reference to U.S.S.G. § 2G2.1**

In his third argument, Brooks contends that his sentence is substantively unreasonable because U.S.S.G. § 2G2.2 was involved.  U.S.S.G. § 2G2.2 applies to, among other things, offenses involving  receiving, distributing, or possessing child pornography.  U.S.S.G. § 2G2.1, in contrast, covers offenses that seek, by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing child pornography.  Brooks asserts that § 2G2.2 is based on legislative enactments designed to increase "the length of sentences imposed" rather than being based on empirical data.  Although § 2G2.1 was used to calculate his actual offense level rather than § 2G2.2, he contends that the flaws in § 2G2.2 infected his sentence because § 2G2.2(c)(1) provided a cross-reference to apply § 2G2.1 to the child-pornography count (Count 3).

Brooks's argument is not persuasive.  The Guidelines range for Brooks's crimes was calculated primarily through § 2G2.1, and he does not argue that § 2G2.1 lacks empirical support.  Moreover, § 2G2.2 applied secondarily only to Count 3—which resulted in a sentence of 240 months' imprisonment—and had no bearing on Counts 1 and 2, which resulted in Brooks's effective sentence of 295 months' imprisonment.

Furthermore, the authority that Brooks relies on does not support his argument. A district court may indeed disagree with a Guideline for policy reasons and *may* reject the Guidelines range based on that disagreement.  *United States v. Herrera-Zuniga*, 571 F.3d 568, 585-86 (6th Cir. 2009) (concluding that the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85, 109-110 (2007), authorizes district courts to reject a Guidelines range because they disagree with the policy rationale behind the applicable Guideline); *United States v. Janosko*, 355 F. App'x 892, 895 (6th Cir. 2009) (recognizing that "district courts may choose to reject guideline sentences for child-pornography offenses simply due to policy disagreements with those guidelines").

Several district courts have in fact rejected the Guidelines range produced by U.S.S.G. § 2G2.2 in cases involving child pornography because those courts concluded that § 2G2.2 is based solely on legislative enactments designed to increase the length of

sentences rather than being based on empirical data.  *See, e.g.*, *United States v. Stern*, 590 F. Supp. 2d 945, 960-61 (N.D. Ohio 2008); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1104 (N.D. Iowa 2009); *United States v. Baird*, 580 F. Supp. 2d 889, 892 (D. Neb. 2008).  *But see United States v. Cunningham*, 680 F. Supp. 2d 844, 848-51 (N.D. Ohio 2010) (concluding that § 2G2.2 is based on empirical data).

On the other hand, the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees.  *See United States v. Mikowski*, 332 F. App'x 250, 255-56 (6th Cir. 2009); *Janosko*, 355 F. App'x at 895.  As the Seventh Circuit observed in rejecting a similar challenge to U.S.S.G. §§ 2G2.1 and 2G2.2:

> [The defendant's] argument is based on analogy to the crack guidelines, yet those guidelines remain valid, even after *Kimbrough*.  Judges are not required to disagree with them; a within-guidelines sentence for a crack offense may be reasonable.  The child-exploitation guidelines are no different: while district courts perhaps have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines, as with the crack guidelines, they are certainly not required to do so.  Because the district court was not obligated to sentence [the defendant] below the range recommended by valid sentencing guidelines, [he] cannot establish error, let alone plain error.

*United States v. Huffstatler*, 571 F.3d 620, 623-34 (7th Cir. 2009) (citations omitted).

Moreover, Brooks cites no authority to support the proposition that a district court must, on its own initiative, examine the underlying bases for a Guideline before imposing a sentence.  The Seventh Circuit has in fact rejected this line of argument:

> [W]e do not think a judge is *required* to consider . . . an argument that a guideline is unworthy of application in *any* case because it was promulgated without adequate deliberation.  He should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline.  For if he is required to do that, sentencing hearings will become unmanageable, as the focus shifts from the defendant's conduct to the "legislative" history of the guidelines.

*United States v. Aguilar-Huerta*, 576 F.3d 365, 367-68 (7th Cir. 2009) (citations omitted) (emphases in original).  We agree with the above reasoning.  In sum, we conclude that the application of U.S.S.G. §§ 2G2.1 and 2G2.2 did not make Brook's sentence procedurally or substantively unreasonable.

**E.     Weighing the § 3553(a) factors**

Brooks's final argument is that his sentence was substantively unreasonable because the district court gave an excessive amount of weight to the nature and seriousness of the offenses involved.  The record belies this contention.  Although the court was clearly concerned with the nature and seriousness of the offenses, it also considered the other § 3553(a) factors in fashioning its sentence, such as protecting the public—particularly children—from Brooks, adequately deterring others, and providing Brooks with treatment during incarceration.  Moreover, the court was entitled to give substantial weight to the nature and seriousness of the offenses because Brooks's conduct was egregious for the reasons detailed above.  Brooks's argument therefore fails to overcome the rebuttable presumption of reasonableness that the sentence enjoys because it falls within the applicable Guidelines range.  *See United States Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.