NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0061n.06

Case No. 20-3096

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | Jan 28, 2021 |
| | | DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CLARENCE TUCKER, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

___

BEFORE: SILER, CLAY, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Clarence Tucker appeals his sentence as substantively unreasonable. The district court properly considered the 18 U.S.C. § 3553(a) factors and decided on an upward variance. It noted Tucker was on both bond and parole for prior offenses including an involuntary manslaughter conviction. Finding that similar defendants received an average sentence of 84 months according to the United States Sentencing Commission's data, the court imposed an 84-month sentence on each count, concurrently, followed by three years' supervised release. We AFFIRM.

Cleveland police stopped Tucker for multiple vehicle code violations. Police searched his car finding cocaine, heroin, fentanyl, marijuana, a digital scale, two cell phones, and $1,703.00. This stop took place within 1,000 feet of an elementary school. Tucker was charged with drug

trafficking offenses and released on bond. Less than one month later, police stopped Tucker as the driver of a car loitering in a "hot spot for drug sales," and he was released without citation.

Police searched the garbage in front of Tucker's residence and discovered mail addressed to Tucker, sleeping medication commonly used to "cut" drugs, cocaine crumbs on a paper towel, and plastic bags. Police then obtained a search warrant for Tucker's residence; while executing the warrant the police stopped Tucker in his vehicle leaving his residence. The arresting officers found cocaine, heroin, a scale, two cellular phones, and $20.00 in the car. Police then searched Tucker's residence pursuant to the warrant and found one ounce of cocaine, ten grams of a mixture of heroin and fentanyl, two digital scales, multiple glass containers and utensils with drug residue, and a loaded handgun. Tucker admitted that the handgun was his and that the drugs were in his home.

In 2019, Tucker pled guilty to three counts in his indictment, and his plea was in accordance with a written plea agreement under FRCP 11(c)(1)(A) and (B). The plea agreement stipulated the base offense level was 20 under USSG § 2D1.1(c)(10), two levels should be added under § 2D1.1(b)(1) because Tucker possessed a firearm, and two levels should be added under § 2D1.1(b)(12) because Tucker maintained his residence for the purpose of manufacturing controlled substances. The court's probation officer agreed that Tucker's base offense level was 20 and that the two-levels firearm enhancement applied, but recommended against the enhancement for maintenance of a residence for the purpose of manufacturing controlled substances. The probation officer also recommended the court subtract three levels for the acceptance of responsibility.

Prior to sentencing, the district court alerted the parties that it was considering an upward variance based on: (1) the nature and circumstances of the offense, (2) the history and

characteristics of the defendant (including criminal history), and (3) to provide just punishment, adequate deterrence, and protection to the public from future harms.

At the sentencing hearing the district court held that the two-level premises enhancement applied and calculated Tucker's offense level to be 21. The advisory Guidelines range, before taking into account any other factor, was 46 to 57 months' incarceration. After considering the totality of the circumstances and the § 3553(a) factors, the court imposed an upward variance. It stated that neither being on bond for drug trafficking nor being on parole for involuntary manslaughter had deterred Tucker from his current criminal conduct. It considered the United States Sentencing Commission's sentencing data that defendants with similar records convicted of similar conduct received an average sentence of 84 months and imposed an 84-month sentence on each count, to run concurrently, followed by three years of supervised release.

II.

We review challenges to the reasonableness of a sentence under an abuse of discretion standard. *United States v. Brooks*, 628 F.3d 791, 795 (6th Cir. 2011). In determining substantive reasonableness under this standard, we look to the "totality of the circumstances including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

III.

Tucker argues that the district court's determination to vary his sentence upward was substantively unreasonable and that it was greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. §3553(a).

The "touchstone" in a review for substantive reasonableness "is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). A sentence within the Guidelines is presumptively reasonable. *United States v.*

*Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). But a sentence which exceeds the Guidelines range does not create a presumption of unreasonableness. *United States v. Robinson*, 892 F.3d 209, 212 (6th Cir. 2018). A sentence is substantively unreasonable when "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). A claim of substantive unreasonableness is a complaint that "a sentence is too long (if a defendant appeals) or too short (if the government appeals)" and that "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 444 (6th Cir. 2018) (citing *Gall*, 552 U.S. at 51). Where a district court varies from the Guidelines, the reviewing court "must give due deference to the district court's decision that the [§] 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Grossman*, 513 F. 3d 592, 596 (6th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).

The district court properly calculated and considered the advisory Guidelines range. It considered the § 3553(a) factors and evaluated the totality of the circumstances surrounding the defendant and the immediate offense. It justifiably considered the facts that Tucker, at the time of his latest arrest, was on parole for involuntary manslaughter and on bond from a recent drug-related offense. Further, a district court may consider the dangerousness of the type of drugs, risk of death, and proximity to a school when evaluating § 3553(a) factors. *United States v. Ford*, 724 F. App'x 428, 435-37 (6th Cir. 2018). The district court was disturbed that Tucker was in close proximity to an elementary school during his arrest and that he possessed the most dangerous types of drugs "causing the death of individuals in our community literally every day." It also considered mitigating factors such as his difficult upbringing in a violent neighborhood, his relationship with

his fourteen-year-old daughter, his interest in substance abuse treatment, and his GED. Although the court opined that Tucker "should be sentenced to 120 months," it based its 84 month sentence on the average sentence given to those defendants with similar criminal histories as Tucker.

A variance is not based on the Guidelines. *United States v. Denny*, 653 F.3d 415, 420 (6th Cir. 2011). A sentencing court calculates the applicable Guidelines range and then considers that range along with the other §3553(a) factors in making an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. We may rely on a defendant's criminal history as a factor in varying upward, even if the criminal history was already factored into the Guidelines range. *See United States v. Lanning*, 633 F.3d 469, 474-75 (6th Cir. 2011); *United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009).

Tucker's case is distinguishable from *United States v. Warren*, 771 F. App'x 637 (6th Cir. 2019). In that case the district court focused solely on the defendant's "criminal record" in deciding to give him the maximum sentence, double the applicable Sentencing Guideline range, for a single firearm offense. *Id.* at 641-42. Here, the district court considered Tucker's criminal history as one of many factors in its decision to vary upward, including the nature and circumstances of the offense, the history and characteristics of the defendant, and need to provide just punishment, adequate determent, and protection to the public due to the seriousness of Tucker's offense. Also, unlike in *Warren*, the district court did not fail to consider "defendants with similar records who have been found guilty of similar conduct" pursuant to § 3553(a)(6). *Id.* at 641 (quoting *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007).

Tucker's case is more akin to *United States v. McBee*, 812 F. App'x 318 (6th Cir. 2020), where the defendant was convicted of firearms and drug trafficking offenses, and the district court imposed a sentence 43 months above the top of the Guideline's range. *Id.* at 321. We distinguished

*McBee* from *Warren*, finding the sentence in *McBee* substantively reasonable. *Id.* at 322-23. Even though "the district court heavily weighed McBee's criminal history in its sentencing determination," it also considered "the seriousness of the offenses," the volume of weapons possessed, and "his history of recidivism." *Id.* at 323. Here, the district court likewise properly considered Tucker's similar history along with the other relevant § 3553(a) factors in deciding to apply the upward variance.

In sum, the district court considered all of the relevant factors and thoroughly laid out its reasoning for its upward variance. Its decision was not contrary to law, arbitrary or based on any impermissible factor, so the court did not abuse its discretion.

AFFIRMED.