NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0313n.06

No. 23-4018

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| | ) | **FILED** |
| UNITED STATES OF AMERICA, | ) | Jul 18, 2024 |
| Plaintiff-Appellee, | ) | KELLY L. STEPHENS, Clerk |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JAMES WOODWARD, | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SILER, COLE, and BUSH, Circuit Judges.

SILER, Circuit Judge. James Woodward disputes his sentence because he believes the enhancements applied to it are applied too widely in child pornography cases. Unfortunately for Woodward, ubiquity alone does not invalidate a Sentencing Guideline. Nor can we do as he urges and force the district court to invoke its discretion to reject the Guidelines. We therefore affirm.

**I.**

Woodward pled guilty to the receipt, distribution, and possession of child pornography. 18 U.S.C. §§ 2252(a)(2), 2252A(a)(5)(B). His Presentence Investigation Report (PSR) proposed five enhancements:

1)  A two-level enhancement because Woodward possessed images of a prepubescent minor or a minor under the age of twelve. USSG § 2G2.2(b)(2).
2)  A two-level enhancement because Woodward used a computer. USSG § 2G2.2(b)(6).
3)  A four-level enhancement because Woodward possessed images that portrayed sadistic or masochistic conduct or other depictions of violence. USSG § 2G2.2(b)(4)(A).
4)  A five-level enhancement because Woodward possessed 600 or more images of child pornography. USSG § 2G2.2(b)(7)(D).
5)  A five-level enhancement because Woodward distributed child pornography in exchange for valuable consideration. USSG § 2G2.2(b)(3)(B)). The PSR evidenced the messages Woodward exchanged with an undercover officer, offering to send the

officer child pornography in exchange for the opportunity to assault the officer's seven-year-old daughter. Although Woodward sent the officer the promised child pornography, he did not show up for their scheduled meeting, citing car troubles. At sentencing, he claimed he never intended to attend the meetup.

These enhancements raised his offense level from 22 to 40. After a downward adjustment for Woodward's acceptance of responsibility, a cross-reference with his criminal history category of IV corresponded to a Guidelines range of 292-to-365 months' imprisonment. Over Woodward's objections, the district court applied the enhancements and sentenced him to 292 months' imprisonment.

## II.
### a.

Woodward declares that the five enhancements applied to his sentence exist "in almost all" child pornography cases. Appellant Br. at 10. Therefore, he argues, the district court should have exercised its authority to disagree with the policy behind these ubiquitously applied Guidelines and refused to apply them to his case.

Woodward is partially correct: a district court *may* disagree with a Guideline for policy reasons and *may* reject that Guideline based on that disagreement. *See United States v. Brooks*, 628 F.3d 791, 799-800 (6th Cir. 2011). But *may* is not *must*: just as it may disagree with and refuse to apply a Guideline, a district court is free to agree with and apply the Guidelines. *Id.* at 800. And it is the district court, not the appellate court, that has the authority to so reject a Guideline. *See United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (empowering "district courts, not appellate courts and not the Sentencing Commission" to make such sentencing determinations).

So, Woodward is right that the district court *could* have disagreed with the policy behind these five enhancements, and *could* have refused to apply them to his sentence. But the district court was not required to disagree with the policy behind the Guidelines, was not required to refuse

to apply the Guidelines, and was certainly not required to heed the unpublished district court opinion that Woodward almost exclusively relies upon. *See United States v. Hennessey*, 3:15-CR-131 (N.D. Ohio, Nov. 24, 2015). Woodward's argument therefore fails. And because Woodward does not dispute that four of the five enhancements are factually applicable to his conduct, we reject his argument without a more granular discussion of his offenses.

**b.**

Woodward next argues that the district court was wrong to find that he distributed child pornography with the expectation that he would receive a sexual encounter with a seven-year-old girl. *See* USSG § 2G2.2(b)(3)(B); *see also United States v. Oliver*, 919 F.3d 393, 399 (6th Cir. 2019) (listing the elements of the enhancement). Specifically, he suggests that the district court should have understood his words as mere "puffery," rather than an actual attempt to exchange child pornography for child sexual assault. This is a credibility challenge. We afford great deference to the district court's credibility determination. *United States v. Mosley*, 53 F.4th 947, 962 (6th Cir. 2022) (according a district court's credibility determination great weight and reviewing it for clear error).

Notably, Woodward does not dispute the veracity of the messages between him and the undercover officer, as reproduced in the PSR. Nor does he dispute that he coordinated a trade—child pornography for the opportunity to assault a seven-year-old girl—with the undercover officer. He does not dispute that he fulfilled his end of this trade by sending the undercover officer 53 files of child pornography, nor that he then described, in graphic detail, how exactly he planned to assault the seven-year-old girl. He does not dispute that he agreed to a time and place to assault the seven-year-old girl.

He only now contends that his messages and actions in furtherance of the exchange were "false puffing" intended to "trick" the officer into believing him. Appellant Br. at 13. Why he felt such puffery or trickery necessary, Woodward does not explain. Nor does he explain how the district court clearly erred in crediting his words to the undercover officer and discrediting his newly manufactured explanation. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). We again reject Woodward's argument.

**c.**

Third, Woodward faults the district court for not interpreting the enhancements through a "law of lenity lense [sic]." Appellant Br. at 21-22. But we can only apply the rule of lenity when, *after* we apply all other rules of statutory interpretation, a "grievous ambiguity" remains. *United States v. Rogers*, 86 F.4th 259, 268 (6th Cir. 2023) (quoting *Pugin v. Garland*, 599 U.S. 600, 610 (2023)). Woodward does not explain what he believes this "grievous ambiguity" to be: He merely repeats his earlier gripe regarding the enhancements' ubiquity. Nor do the traditional tools of statutory interpretation force us to guess as to the meaning of any of the enhancements applied against Woodward, or their application to his conduct. *See Rogers*, 86 F.4th at 268. The rule of lenity therefore does not apply.

**d.**

Finally, Woodward summons the Eighth Amendment to argue that his 292-month sentence is cruel and unusual. But to show a violation of the Eighth Amendment, Woodward must show an extreme disparity between his crimes and his sentence. *See United States v. Young*, 766 F.3d 621, 625 (6th Cir. 2014) ("Th[is] test is rarely met."). Because Woodward did not attempt to do so and instead rehashed his policy argument, he forfeited this claim. *See United States v. Layne*, 192 F.3d

556, 566-67 (6th Cir. 1999) (citation omitted) (holding that an appellant has no right to appellate review of "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation").

AFFIRMED.